William C. Heoht, Jr., J.
Petitioner seeks to revoke an order of the State Rent Administrator which determined that petitioner’s building was not a hotel within the meaning of the Emergency Housing Rent Control Law (L. 1946, ch. 274, as amd.) and the State Rent and Eviction Regulations.
On April 28, 1952 respondent issued an opinion letter granting petitioner’s building hotel status. The opinion letter contained a statement that it was being issued upon the assumption of the accuracy of the claims set forth in the applicant’s request for hotel status. Thereafter respondent found that the facts did not warrant such status and he contends that he acted validly and pursuant to law in revoking the status previously conferred.
The petitioner asserts that in addition to the opinion rendered in 1952, after an adversary proceeding brought by tenants against the hotel, an order was entered in 1957 declaring it to be a hotel. It argues that no fraud, no errors and no new facts were before the Administrator when the 1957 order and the 1952 opinion were reversed. .It claims it made an outlay of $153,000, $79,000 of which was for capital improvements based upon the hotel status and that all services common to the operation of a hotel were furnished.
In the definition set forth in section 2 (subd. 2, par. [b]) of the Emergency Housing Rent Control Law (as amd. by L. 1959, ch. 695) the Legislature has indicated what constitutes a hotel. This statute reads: “ (b) notwithstanding any previous *754 order, finding, opinion or determination of the commission, housing accommodations in any establishment which on March first, nineteen hundred fifty, was and still is commonly regarded as a hotel in the community in which it is located and which customarily provides hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, provided, however, that the term hotel shall not include any establishment which is commonly regarded in the community as a rooming house, irrespective whether such establishment provides either some services customarily provided by hotels, or is represented to be a hotel, or both ”.
As petitioner points out, the essence of the above is that the establishment must have been commonly regarded as a hotel on March 1, 1950, must still be so regarded, and must furnish the customary hotel services above enumerated. It argues that the words “ notwithstanding any previous order ” "were inserted by the Legislature to permit the Administrator in a proper case to review a determination previously made and to come to a contrary conclusion if adequate cause is shown.
I agree Avith petitioner that this language Avhich Avas inserted in 1959 was never intended by the Legislature to authorize the Administrator to cancel hotel status in cases where the property is Avell run and has in fact been improved. Petitioner correctly contends that it was obviously designed to cover those establishments which are not in fact hotels.
Respondent argues, and correctly so, that he has the poAver to revoke a prior opinion issued by him. It is equally clear, however, that this power should not be exercised on mere caprice. Recognizing this, respondent points out that the hotel status here Avas achieved because of an inaccurate submission of material facts.
The record supports him in his contention that the building Avas a rooming house in 1943 AAThen it Avas first registered as such. Respondent maintains that the attempt Avas made to “ masquerade ” as a hotel only when it could seiwe the goal of escaping existing controls.' When such an attempt Avas rejected by the Federal authorities neither petitioner, Fabian Studios, Inc., nor its predecessors, Mirog Corp., took any action Avhatsoever Avhich would warrant even an inference that they themselves considered this establishment as other than a rooming house. Respondent says that in every action by the operators other than one attempt to escape control in 1947, and in every proceeding before the Federal authorities and before the State *755 Bent Commission prior to the 1952 opinion letter, the landlords held this establishment out to be a rooming house. It appears that two months before filing an affidavit in which it was asserted that the building was commonly regarded as a hotel in the community on March 1, 1950, the manager of this building, Fay Swell, submitted a sworn registration to the State Bent Administrator in which she averred that the building was a rooming house.
On October 2, 1957, after an inspection and investigation of the building, the Local Bent Administrator notified two complaining tenants and the landlord that proceedings were being-commenced to determine whether or not the establishment may be classified as a hotel. A conference was held on October 9, 1957, at which petitioner maintained that it was a hotel entitled to decontrol and the tenants asserted they were not receiving the services which the landlord claimed were being supplied. Several inspections were thereafter made and by order issued June 30, 1958 the Local Bent Administrator determined that the establishment was not a hotel under subdivision 7 of section 3 of the regulations. The petitioner protested the Administrator’s ruling, and asserted that the building was a hotel, and requested a formal hearing. Several tenants filed answers contesting the landlord’s allegation that the establishment was a hotel. By order issued October 1, 1958, the State Bent Administrator denied the protest, and affirmed the Local Bent Administrator’s ruling.
Petitioner instituted an article 78 proceeding and according to the Administrator, in order to more carefullly review and re-examine his determination, he requested the Supreme Court to remit the proceeding for further consideration. According to the Administrator in the reopened proceedings photos of the entire building were considered, and additional inspections and investigations were conducted. A second hearing was held at which the landlord adduced testimony on its behalf maintaining that the building should be considered a hotel. Bespondent, however found that the establishment was not a hotel within the meaning and intent of the Emergency Housing Bent Control Law on March 1, 1950, the critical date. He found as a fact on the basis of the entire record that prior owners, including the operator who had obtained the 1952 opinion letter ‘ ‘ knew and regarded this establishment to be a rooming house, and not a hotel, from at least 1943 to at least March 5,1952.”
It would appear from the foregoing that there is a sound basis for revocation of petitioner’s hotel status, from the point of view of the Administrator.
*756 To overrule the commission in face of this record would be to substitute the court’s evaluation of the facts for that of respondent, and the evaluation of the Administrator, in the light of all the facts, may by no means be called arbitrary or unreasonable.
I am not unmindful of or insensitive to the fact that petitioner made a substantial investment in the building, relying upon the status which it thought and had a right to believe the premises enjoyed. However, it brought about the situation which evokes its grievance by its alleged conduct with respect to the tenants who complained of and who proved to the Administrators’ satisfaction, the lack of essential services. It is no argument that the majority of the building’s residents did not complain, and that respondent should have concluded therefrom that all was well.
Having found that essential services were being denied, but would not be supplied because of the “hotel status” which petitioner asserted it enjoyed, the Administrator, unhappily for petitioner, reviewed the entire record and established a basis for revocation.
To say that the revocation was unjustified, would, as has been previously indicated herein, be ignoring the record. That the Administrator could have chosen to continue hotel status despite the tenants’ complaints is obvious, but that does not warrant disturbing his finding because he decided not to.
Only if the court were to conclude that the action is arbitrary, unreasonable, capricious or in violation of law or regulations should the revocation be reversed, and on the basis of the entire record before me, I am unable to do so. Accordingly, the application must be denied and the petition is dismissed.